UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUDITH BAUMER,

                    Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                      06-CV-233S

INGRAM LONG TERM DISABILITY PLAN
and CONTINENTAL CASUALTY COMPANY,

                    Defendants.

## I. INTRODUCTION

In this action, Plaintiff Judith Baumer seeks to recover long term disability benefits

under the Defendant Ingram Long Term Disability Plan ("the Plan"), issued by Defendant

Continental Casualty Company[1] ("Continental").  Plaintiff asserts claims for benefits and

declaratory relief pursuant to 29 U.S.C. § 1132(a)(1)(B), and for attorney's fees pursuant

to 29 U.S.C. § 1132(g), which are both sections of the Employee Retirement Income

Security Act of 1974 ("ERISA").  Presently before this Court is Defendants' Motion for

Summary Judgment.[2]  For the reasons that follow, Defendants' motion is denied.

---

[1] Since Plaintiff commenced this action, Defendant Continental Casualty Company's claims administrator has been acquired by and renamed as Hartford Life Group Insurance Company.  For consistency, however, this defendant is referred to only as "Continental" in the instant Decision and Order. (Defendants' Memorandum, Docket No. 14, p. 3; see also Docket Nos. 13 and 17-3, ¶ 11.)

[2] In support of their motion, Defendants filed a Notice of Motion, the Affidavit of Marsha L. Macko with exhibits, a Memorandum of Law, a Local Rule 56 Statement of Undisputed Material Facts, a Reply Memorandum of Law, and a Response to Plaintiff's Notice of Supplemental Authority.  (Docket Nos. 12–15, 19, 31.)  In opposition, Plaintiff filed a Memorandum of Law, the Affirmation of E. Peter Pfaff, Esq., with attachment, a Response to Defendants' Statement of Undisputed Material Facts, and a Notice of Supplemental Authority.  (Docket Nos. 17 and 30.)

## II. BACKGROUND[3]

On October 25, 1993, Plaintiff began working for Ingram Micro, a division of Ingram

Industries, Inc. ("Ingram"), as a programmer/analyst. (Defendants' Statement of Facts

("Defs' State."), Docket No. 15, ¶ 10; AR 815.) During her employment, Plaintiff was

covered under the Plan, which is a qualified pension plan governed by ERISA. (Defs'

State., ¶ 11.) The Plan was insured through a Group Insurance Policy ("the Policy") that

was issued to Ingram by Continental. (Id.)

The Policy provides long term disability benefits to employees of Ingram with "Total

Disability." (Defs' State., ¶¶ 4, 11; Policy 9.) Pursuant to the Policy, an eligible employee

who, because of injury or sickness, is continuously unable to perform the duties of her own

occupation will be entitled to benefits for the Insured Employee Occupation Period[4]

following the initial Elimination Period.[5] (Defs' State., ¶ 5; Policy 9.) To continue receiving

long term disability benefits after expiration of the Elimination Period, the employee must

then meet a different definition of "Total Disability," which provides, in relevant part, that

the eligible employee, because of injury or sickness, is:

> (1) continuously unable to engage in any occupation for which he is or
> becomes qualified by education, training or experience; and
> (2) under the regular care of a licensed physician other than himself.

(Id.)

---

[3] This Court has accepted facts included in Defendants' Statement of Undisputed Material Facts to the extent that Plaintiff has not controverted them in her submissions. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted). "Policy" citations refer to pages of the Policy, which is attached as Exhibit A to the Affidavit of Marsha L. Macko. (Docket No. 13-2.) "AR" citations refer to pages of the Administrative Record, which is attached as Exhibit B to the Affidavit of Marsha L. Macko. (Docket Nos. 13-3 – 13-13.)

[4] Plaintiff's "Insured Employee Occupation Period" is defined as 24 months. (Defs' State., ¶ 6; Policy 20.)

[5] Plaintiff's "Elimination Period" is defined as 150 days. (Defs' State., ¶ 7; Policy 27.)

Plaintiff's last day of employment with Ingram was May 19, 1995, when she stopped working due to sickness with abdominal pain, gastroesophageal reflux disease ("GERD"), diarrhea, and vomiting.  (Defs' State., ¶¶ 13,16; AR 815A.)  Plaintiff submitted an initial claim report for long term disability benefits, which included an Attending Physician's Statement completed by her physician, Dr. Raymond J. Tuoti, dated October 13, 1995.  (Defs' State., ¶ 19; AR 816, 816A.)  Dr. Tuoti reported that Plaintiff (1) had been diagnosed with "IGA immune deficiency;" (2) had the subjective symptoms of abdominal pain and diarrhea; (3) had first visited him for treatment for this diagnosis on January 23, 1995; (4) had last visited him for treatment for this diagnosis on August 24, 1995; and (5) had been totally disabled from May 19, 1995, through the present date that he completed the statement.  (Defs' State., ¶¶ 20, 21; AR 816, 816A.)  Dr. Tuoti's prognosis as to Plaintiff's "[d]ates totally disabled" was "indefinite," he did not expect "a fundamental or marked change in the future," and his expectation of when she would "recover sufficiently to perform duties" was "unknown."  (Id.)

By letter dated November 9, 1995, Ingram conveyed Plaintiff's long term disability claim documents to Continental on her behalf.  (Defs' State., ¶ 14; AR 814.)  By letter dated January 25, 1996, Continental approved Plaintiff's claim for long term disability benefits, retroactive to October 17, 1995, which was the conclusion of Plaintiff's Elimination Period pursuant to the Policy.  (Defs' State., ¶ 23; AR 775–76.)  Plaintiff then received long term disability benefits from Continental for nearly ten years.  (Defs' State., ¶ 24.)

In June 2005, Continental advised Plaintiff by letter that, following its review of her claim for continued benefits, it had determined that she no longer met the definition of "Total Disability" under the Policy and was therefore no longer entitled to receive continued

long term disability benefits.  (AR 498–500A.)  Continental advised Plaintiff that her claim for long term disability benefits had been terminated and that she had a right to appeal. (Id.)

In terminating Plaintiff's benefits, Continental relied, in part, on the opinion of Dr. Jerome Siegel, who reviewed Plaintiff's medical records upon Continental's request.  (AR 500.)  Dr. Siegel also spoke with Dr. Robert Hostoffer, one of Plaintiff's treating physicians. (Id.)  Dr. Siegel determined that despite Plaintiff's diagnoses of "immunoglobulin deficiency, intermittent abdominal pain, and asthma," her gluten sensitivity, and her complaints of "chronic fatigue and intermittent headaches, which appear[ed] to be caused by receipt of [intravenous] immunoglobulin ("IVIG") therapy," Plaintiff's regular physical examinations and laboratory studies were reasonably normal, and therefore she was able to perform sedentary work activities on a full time basis, with a 20-pound lifting restriction, allowing for alternating between sitting and standing.  (Id.)

By letter from her counsel dated December 16, 2005, Plaintiff appealed Continental's termination of her benefits.  (Defs' State., ¶ 96; AR 269–71.)  In support of her appeal, Plaintiff provided, among other documents, reports from five of her treating physicians and her intravenous therapy nurse, as well as medical records and letters. (Defs' State., ¶ 97.)

With respect to her treating physician reports, Plaintiff included the July 27, 2005 report from Dr. Hostoffer, wherein he opines that, due to her common variable immunodeficiency syndrome, which requires IVIG treatment, as well as her abdominal pain, occasional diarrhea, severe fatigue, and joint pains, Plaintiff is "unable to work" and, further, that he "would not be able to employ her in any position [in his office] due to her

recurrent infections and probable absentee[ism] from work."  (AR 272.)

Second, Plaintiff submitted the August 23, 2005 report from Dr. Carmen M. Todoro, which notes that Plaintiff "deserves long term disability," as she is "unable to perform normal daily activities due to [her] chronic disease states" and must "receive IVIG monthly" infusions from which Plaintiff "usually needs about two weeks to recover."  (AR 273.)

Third, Plaintiff submitted the July 5, 2005 report from Dr. Philip Samuels, wherein he concludes that Plaintiff "suffers from multiple chronic medical problems, which do result in a long term disability," including "chronic decrease in bone density (osteopenia) that has led to painful stress fractures in her pelvis . . . [and] causes her extreme pain" and "an immune problem, which requires close therapy and observation."  (AR 274.)

Fourth, Plaintiff submitted the August 8, 2005 report from Dr. Tuoti, wherein he notes that Plaintiff has been his patient "for the last 10 to 12 years" due to "a quinine deficiency [with] GI complications, significant esophageal reflux, right lower quadrant pain, episodes of diarrhea, failure to thrive, [and] chronic fatigue" and he opines that "[b]ecause of all her [health] problems, [Plaintiff] is not able to work for any length of time."  (AR 275.)

Finally, Plaintiff included the August 10, 2005 and November 15, 2005 reports from Dr. Eugene Gosy, wherein he evaluates Plaintiff's "toxic vascular headaches induced by [IVIG] infusion that she requires for iron deficiency" and concludes that, due to Plaintiff's "long course of potentially incapacitating headaches, her employment options are tenuous and are further limited by potential for exposure to virulents."  (AR 276–79.)

Plaintiff's appeal was assigned to Marsha L. Macko, an Appeal Specialist at Continental, who submitted Plaintiff's claim file to Dr. Rosaline Vasquez, a physician in internal medicine.  (Defs' State., ¶¶ 99, 107; AR 265.)  At Continental's request, Dr.

Vasquez reviewed Plaintiff's new materials along with the originally submitted medical documentation, and also contacted three of Plaintiff's treating physicians—Drs. Hostoffer, Tuoti, and Gosy.  (Defs' State., ¶ 107; AR 113–52.)

Dr. Vasquez summarized her determinations regarding Plaintiff's medical history, including Plaintiff's diagnoses and claims with respect to her hypogammaglobulinemia, gastrointestinal complaints, headaches, fatigue, thyroid status, asthma, allergies, anemia, cardiac status, bone pain, and psychiatric status, and concluded that although Plaintiff has many subjective complaints and medical concerns, her medical reports reflect no evidence of objective impairments that would preclude her from carrying out a full time sedentary occupation.  (AR 136–45.)  In particular, Dr. Vasquez found that Plaintiff's diagnosis of common variable immunodeficiency syndrome lacked supporting objective evidence, noting that in 1996, Dr. Hostoffer, Plaintiff's treating physician, had opined that, following testing, Plaintiff's relevant "levels were not quite low enough to represent that disorder." (AR 137.)  Rather, Dr. Hostoffer found support for this diagnosis, as well as the initiation of Plaintiff's IVIG infusion therapy, in her reports of past symptoms and infections.  (Id.)

Dr. Vasquez thus determined that the IVIG infusions that Plaintiff undergoes every three to four weeks—and that cause Plaintiff to suffer toxic headaches—have "been guided by her subjective symptoms," but are not a necessary therapy.  (Id.)  Dr. Vasquez noted that Plaintiff stopped receiving IVIG infusions "for six months around January 1999" upon a physician's prediction at the time that Plaintiff would do well without it.  (Id.)  Although Plaintiff reported difficulty during those six months without IVIG therapy, including infections, dehydration, asthma symptoms, and hospitalization, Dr. Vasquez noted that no documentation of these events was included in Plaintiff's records.  (Id.)  Finding no

6

objective medical evidence or documentation to support the remainder of Plaintiff's medical

diagnoses and determining instead that Plaintiff's personal care choices and restricted

lifestyle were self-imposed, Dr. Vasquez concluded that Plaintiff's "physical status would

not require special occupational functional restrictions."  (AR 136–45.)

After receipt and review of Dr. Vasquez's findings, Continental concluded that the

medical evidence contained therein failed to establish that Plaintiff was continuously

unable, due to injury or sickness, to engage in any occupation for which she was qualified

by education, training, or experience.  (Defs' State., ¶ 237).  By letter to her attorney dated

February 24, 2006, Continental (1) informed Plaintiff that the termination of her disability

benefits had been upheld, (2) detailed the information reviewed and the rationale employed

in making the final appellate decision, and (3) advised that she had exhausted her

administrative remedies.  (AR 110–111A).  This lawsuit followed.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A

fact is "material" only if it "might affect the outcome of the suit under governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d

202 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." Id.  In determining whether a genuine dispute

regarding a material fact exists, the evidence and the inferences drawn from the evidence

"must be viewed in the light most favorable to the party opposing the motion." Adickes v.

S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970)

(internal quotations and citation omitted); see also FED. R. CIV. P. 56©.

"Only when reasonable minds could not differ as to the import of evidence is

summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation

omitted).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any

evidence in the record from which a reasonable inference could be drawn in favor of the

opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion

Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).  The function of

the court is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## B.    Review of a Plan Administrator's Decision

Plaintiff's claims in this action fall under the ERISA provision that permits a

participant or beneficiary of an employee benefit plan to commence a civil lawsuit "to

recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29

U.S.C. § 1132(a)(1)(B).

Because there is no right to a jury trial under ERISA, the district court typically acts

as the finder of fact and conducts a bench trial "on the papers." Muller v. First Unum Life

Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  The court reviews a plan administrator's

decision to terminate benefits "under a *de novo* standard unless the benefit plan gives the

administrator . . . discretionary authority to determine eligibility for benefits or to construe

the terms of the plan." Id. at 123–24 (quoting Firestone Tire & Rubber Co. v. Bruch, 489

U.S. 101, 115, 109 S. Ct. 948, 956–57, 103 L. Ed. 2d 80 (1989)).  In applying the *de novo*

standard, a court reviews all aspects of the termination of benefits, including fact issues, "to determine for itself whether the claimant should be granted or denied the requested relief." Lijoi v. Continental Cas. Co., 414 F. Supp. 2d 228, 238 (E.D.N.Y. 2006) (internal quotations and citations omitted); see also Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 293 (2d Cir. 2004).

Here, the parties agree that this Court must evaluate Defendants' decision to terminate Plaintiff's benefits under the *de novo* standard of review.   (Defendants' Memorandum, p. 32; Plaintiff's Memorandum, p. 2).

**C.     Defendants' Motion for Summary Judgment**

Defendants contend that they are entitled to summary judgment because the decision to terminate Plaintiff's long term disability benefits was correct.   Defendants made this decision upon Continental's determination, based on the evidence in the Administrative Record, that Plaintiff does not have "Total Disability" pursuant to the Policy, because she is *not* continuously unable, due to injury or sickness, to engage in any occupation for which she is or becomes qualified by education, training, or experience.   (Docket No. 14, p. 32.)

In response, Plaintiff asserts that there is evidence in the record to support a finding that she *does* meet the definition of "Total Disability" pursuant to the Policy, thus presenting issues of material fact in dispute that preclude summary judgment.   Specifically, Plaintiff points to (1) her treating physicians' opinions that she is totally disabled and unable to work in any occupation, (2) the Social Security Administration's finding that she is totally disabled from all gainful activity, and (3) Continental's finding that she was entitled to long term disability benefits for nearly ten years prior to its termination of her ongoing benefits.

Here, the Administrative Record consists of conflicting reports and opinions from

9

Plaintiff's treating physicians and from the physicians from whom Continental sought review of Plaintiff's medical files regarding Plaintiff's ability to work in any occupation for which she is qualified.  For example, Continental's reviewing physician, Dr. Vasquez, opined that none of Plaintiff's diagnoses and afflictions supported a finding of "Total Disability" and concluded that Plaintiff's "physical status would not require specific occupational restrictions and she would be able to carry out a full time sedentary occupation." (AR 146.)  Conversely, Plaintiff's treating physicians, Drs. Hostoffer and Tuoti, each opined that Plaintiff is unable to work in any occupation due to her chronic medical problems.  (AR 272; AR 275.)

These contradictions require a credibility determination that can properly be made by this Court when acting as the fact-finder in a bench trial, but not when considering a motion for summary judgment.  See Napoli v. First Unum Life Ins. Co. 78 F. App'x 787, 789 (2d Cir. 2003); see also Anderson 477 U.S. at 249.  Absent any indication that Plaintiff's treating physicians' opinions are unreliable as a matter of law, the differing opinions of Plaintiff's treating physicians and Defendants' reviewing physicians present a genuine dispute regarding the material fact of whether Plaintiff has "Total Disability" pursuant to the Policy and is entitled to continued disability benefits.  See Napoli, 78 F. App'x at 789.

Moreover, under the *de novo* standard of review, summary judgment is not appropriate where "[a] finder of fact applying the provisions of the [Policy], accepting all [of] plaintiff's assertions as true, and making all reasonable inferences in her favor could conclude that plaintiff is entitled to prevail[6] on her assertion" that she has "Total Disability"

---

[6] The plaintiff has the burden to prove, by a preponderance of the evidence, that she meets the relevant definition of disability.  See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006).

pursuant to the Policy and is therefore entitled to continued long term disability benefits. Locher v. Unum Life Ins. Co. of Am. (*Locher I*), No. 96 Civ. 3828, 1999 WL 731428, at *2 (S.D.N.Y. Sept. 20, 1999).  Having reviewed the parties' submissions, the Administrative Record, and the audio recording of the parties' oral argument on this issue, this Court finds sufficient evidence in the record from which reasonable inferences can be drawn in Plaintiff's favor to support her claim of "Total Disability" pursuant to the Policy and entitlement to continued benefits.  Indeed, drawing every reasonable inference in Plaintiff's favor with respect to evidence of her treating physicians' opinions[7] and receipt of Social Security disability benefits,[8] as well as the fact that her long term disability benefits were terminated rather than denied,[9] could lead a fact-finder to conclude upon a *de novo* review that Plaintiff meets the definition of "Total Disability."  Locher I, 1999 WL 731428, at *2.

Accordingly, upon viewing the evidence under the *de novo* standard and in the light most favorable to Plaintiff, given the genuine dispute of material fact as to whether Plaintiff is "Totally Disabled" within the meaning of the Policy based on contradictory medical evidence, this Court finds that Defendants are not entitled to summary judgment at this time.  See, e.g., Onge v. Unum Life Ins. Co. of Am., No. 3:07CV01249, 2010 WL 3802787 (D.Conn. Sept. 20, 2010); Booth v. Hartford Life & Accident Ins. Co. of Am. No. 3:08-

---

[7] See Paese, 449 F.3d at 442 ("[A] district court, engaging in a *de novo* review, [can] evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative").

[8] See id. at 442–43 ("[Upon a *de novo* review, the district] court acted well within its discretion when it considered the SSA's findings as some evidence of total disability, even though they were not binding on the ERISA Plan, and even though the SSA's definition of disability may differ from that in the [relevant policy]").

[9] See Connors v. Connecticut Gen. Life. Ins. Co., 272 F.3d 127, 136 (2d Cir. 2001) (holding that a district court conducting a *de novo* review of a claim for benefits properly recognizes the distinction between an administrator's termination of ongoing benefits and a denial of an application for benefits, and may choose to accord more weight to evidence of a termination).

cv–0013, 2009 WL 652198 (D.Conn. Feb. 3, 2009); <u>Katzenberg v. First Fortis Life Ins. Co.</u>,

500 F. Supp. 2d 177 (E.D.N.Y. 2007); <u>Troy v. Unum Life Ins. Co. of Am.</u>, No. 3:07Civ.9975,

2006 WL 846355 (S.D.N.Y. Mar. 31, 2006);  <u>Sarosy v. Metropolitan Life Ins. Co.</u>, 94 Civ.

5431, 1996 U.S. Dist. LEXIS 10765 (S.D.N.Y. July 20, 1996).

## IV. CONCLUSION

For the foregoing reasons, this Court finds that a genuine dispute of material fact

exists as to whether Plaintiff meets the definition of "Total Disability" pursuant to the Policy

and is entitled to continued long term disability benefits.  Accordingly, Defendants' motion

for summary judgment is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket

No. 12) is DENIED.

FURTHER, that Plaintiff's Motion for Oral Argument (Docket No. 32) on Defendants'

summary judgment motion is DENIED as moot.

FURTHER, that counsel shall appear at a status conference before this Court on April

19, 2011, at 9:00 a.m., to discuss how this case shall proceed.


SO ORDERED.


Dated:        March 26, 2011
              Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court